UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| RAFAEL RIVERA, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 1:13-cv-337-CLC-SKL |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Rafael Rivera[1] ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff has moved for judgment on the pleadings [Doc. 14] and has filed a memorandum in support [Doc. 15]. Defendant has moved for summary judgment [Doc. 18] and has filed a memorandum in support [Doc. 19]. Plaintiff filed a brief in response to Defendant's motion [Doc. 20], and this matter is now ripe. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 18] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

---

[1] Plaintiff's name is listed on the complaint and pleadings filed in this case as Rafael Rivera. Various documents in the transcript refer to Plaintiff as Rafael Rivera, Jr.

# I.  ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed his applications for DIB and SSI on March 9, 2011, alleging disability as of January 8, 2011 (Transcript [Doc. 10] ("Tr.") 124, 133).[2]  Plaintiff's claims were denied initially and upon reconsideration, and he requested a hearing before the ALJ (Tr. 98, 105, 108, 111).  ALJ Edward Snyder held a hearing on February 24, 2012, during which Plaintiff was represented by an attorney (Tr. 17, 40).  The ALJ issued a decision on May 4, 2012, in which the ALJ determined Plaintiff was not disabled because Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy (Tr. 17-25).  Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision on May 25, 2012 (Tr. 11).  The Appeals Council initially denied Plaintiff's request for review (Tr. 6), but then set aside the denial in order to consider additional information provided by Plaintiff (Tr. 1); the Appeals Council again denied Plaintiff's request for review, making the ALJ's decision dated May 4, 2012 the final, appealable decision of the Commissioner (Tr. 1).  Plaintiff filed the instant action on September 26, 2013 [Doc. 1].

# II.  FACTUAL BACKGROUND

## A.  Education and Employment Background

Plaintiff was 49 years old on the alleged onset date (Tr. 24).  Plaintiff has a college education and earned an associate's degree (Tr. 44).  Plaintiff has past relevant work as an apartment maintenance worker, an automobile parts clerk, a poster maker, a janitor, and a collections and credit manager (Tr. 45).  Plaintiff attempted to work for three employers (as a

---

[2] Plaintiff previously filed an application for benefits during a closed period of disability from December 1, 2008 to December 31, 2009.  A hearing was held regarding that application and the ALJ in that case found Plaintiff to be disabled during the closed period and awarded benefits. While the ALJ mentioned the prior application during the hearing, and the previous decision is included in the record (Tr. 84-90), the previous award of benefits does not appear to have a direct bearing on the present issues.

pawn shop clerk, a janitor, and a laborer) after his alleged onset date of January 8, 2011, but "due to [his] physical and mental state of mind, [he] just couldn't handle it" (Tr. 49-50).

## B. Medical Records

Plaintiff's arguments focus on the ALJ's consideration of the medical records provided by certain sources, as well as the ALJ's discounting of Plaintiff's credibility. Only the portions of Plaintiff's medical records relevant to the parties' arguments will be addressed within the respective sections of the Court's analysis below, but all relevant records have been reviewed.

## C. Hearing Testimony

At the hearing on February 24, 2012, Plaintiff and a vocational expert ("VE"), David Boatner, testified (Tr. 40). The Court has carefully reviewed the transcript of the testimony at the hearing, however, only the portions of the hearing relevant to the parties' arguments will be addressed within the respective sections of the Court's analysis below.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

## A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

**B.      The ALJ's Findings**

In the ALJ's decision, dated May 4, 2012, he made the following findings. At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since January 8, 2011, the alleged onset date (Tr. 19). At step two, the ALJ found Plaintiff had the following severe impairments: history of degenerative changes to the spine, depression, bipolar II, fibromyalgia, diabetes with neuropathy, and possible seizure disorder (Tr. 19). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or

medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 20). The ALJ specifically considered Listings 1.00, 9.00, and 12.04, and further considered the effects of Plaintiff's obesity (Tr. 20-21). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform unskilled light work, except that Plaintiff was unable to push and pull frequently with his lower extremities; was unable to climb ladders, ropes, and scaffolds; was restricted to occasional posturals; was limited to frequent handling and fingering bilaterally; should not be required to drive; was restricted to tasks that can be learned in less than thirty days involving no more than simple work related decisions with few workplace changes; should not have to work with the general public; and should not have to constantly interact with coworkers and supervisors (Tr. 21). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work (Tr. 23-24). At step five, the ALJ noted that Plaintiff was a younger individual on the alleged onset date but subsequently changed age category to closely approaching advanced age, had at least a high school education, and was able to communicate in English (Tr. 24). After considering Plaintiff's age, education, work experience, and RFC, and after utilizing the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App'x 2 ("Grids") as a framework for his decision, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 24-25). These findings led to the ALJ's determination that Plaintiff was not under a disability at any time from January 8, 2011, the alleged onset date, through May 4, 2012, the date of the decision (Tr. 25).

## IV.    ANALYSIS

Plaintiff alleges that the ALJ erred by: (1) failing to comply with the treating physician rule; and (2) improperly assessing Plaintiff's subjective complaints of pain.  Both of Plaintiff's arguments will be addressed below.

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *McClanahan*, 474 F.3d at 833 (internal citations omitted).  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court

may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

As relevant in this review, an ALJ must consider "the claimant's allegations of his symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is

entitled to substantial deference).  Substantial deference has been held to mean that "[a]n [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

      **B.**      **Treating Physician Rule**

Plaintiff argues that the ALJ violated the treating physician rule by:  (1) failing to discuss the opinions of Plaintiff's treating psychiatrists, Dr. Sivaji Bondalapati and Dr. Angelina Supan; (2) failing to assign a weight to these opinions; and (3) failing to give good reasons for discounting the opinions.  Specifically, Plaintiff contends that the ALJ failed to discuss the GAF scores provided by Dr. Bondalapati, which Plaintiff contends are medical opinions that must be evaluated like any other medical opinion pursuant to agency regulations.  Plaintiff cites to an agency administrative message instruction entitled "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication," dated July 22, 2013 (hereinafter "AM-13066"), which specifically directs ALJs that "[w]hen case evidence includes a GAF from a treating source and you do not give it controlling weight, you must provide good reasons in the personalized disability explanation or decision notice." [Doc. 15 at Page ID # 799 (quoting AM-13066, attached as [Doc. 15-1])].  Plaintiff contends that the ALJ failed to mention the numerous GAF assessments provided by Plaintiff's treating physicians, thus violating agency policy requiring GAF scores to be treating as medical opinions.  Plaintiff further contends that the ALJ improperly rejected the opinions of his treating psychiatrists, instead giving great weight to the opinion of Karen Lawrence, a stage agency psychologist who did not examine Plaintiff.  Plaintiff argues that Ms. Lawrence's opinion does not constitute substantial evidence for the ALJ's

8

rejection of Plaintiff's treating psychiatrists' opinions, which Plaintiff contends are entitled to controlling weight under the treating physician rule.

In its responsive motion, Defendant argues that if the ALJ erred with regard to Plaintiff's GAF scores, such error was harmless. Defendant argues that most of the GAF scores referenced by Plaintiff were issued prior to Plaintiff's alleged onset date of January 8, 2011. Defendant contends that GAF scores are not entitled to any weight when there is no evidence that the physician assigned the score based on his or her opinion of the patient's ability to work. Defendant contends that the ALJ's failure to weight Plaintiff's GAF scores is harmless because GAF scores have little probative value. Further, Defendant argues that Plaintiff's GAF scores actually support the ALJ's findings, as the Plaintiff's GAF scores during the relevant period were a 55 and his GAF scores during the year prior to his alleged onset date ranged from 52 to 55, which indicate only moderate symptoms or impairments. Defendant contends that these scores are not inconsistent with the ALJ's RFC finding limiting Plaintiff to unskilled work with restrictions. Finally, Defendant notes that the administrative message relied upon by Plaintiff, AM-13066, was not in effect until after the ALJ's decision, and contends that the administrative message itself explains the problems with using GAF scores to evaluate disability. Defendant argues that AM-13066, as well as case law, requires that GAF scores be accompanied by supporting evidence in order to be given much weight, and contends that such supporting evidence was lacking here. Defendant therefore argues that the ALJ did not err, but even if the ALJ did err, such error was harmless.

In his brief in response to Defendant's motion, Plaintiff contends that the ALJ did err in his consideration of Plaintiff's GAF scores, and that such error warrants reversal. Plaintiff reiterates many of his prior arguments but also makes new arguments in response to Defendant's

motion. Particularly, Plaintiff contends that AM-13066 "does not appear to state new Agency policy," but "merely reminds ALJs that GAFs should have always been considered the opinions of their authors, as many Courts had previously held." [Doc. 20 at Page ID # 834]. Plaintiff argues that the GAF scores opined by Dr. Bondalapati were supported by his treatment notes, which included symptoms of rage outbursts, irritability, hostility, and auditory and visual hallucinations [*Id.* at Page ID # 836 (citing (Tr. 370)]. Plaintiff contends that the ALJ's RFC determination's limitations on Plaintiff's ability to interact with coworkers and supervisors "constantly" does not adequately address Plaintiff's rage outbursts and difficulty in dealing with others, symptoms which have persisted with only slight improvement despite medication and extensive treatment. Plaintiff therefore contends that the ALJ's decision to ignore Dr. Bondalapati's "substantial and consistent evidence" as a treating physician in favor of the opinion of a state agency psychologist who never examined Plaintiff was reversible error [*Id.* at Page ID # 837].

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is well settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (now (c)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference or weight commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the

treating source." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192-93 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2) (now (c)(2)); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).

"However, 'a treating physician's opinion is only entitled to such . . . deference when it is a medical opinion.'" *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) (alteration in original) (quoting *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010)). Where a treating physician opines "on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors—his decision need only explain the consideration given to the treating source's opinion." *Id.* (quoting *Turner*, 381 F. App'x at 493) (internal quotation marks omitted). An opinion by a treating physician on such an issue reserved to the Commissioner "is not entitled to any particular weight." *Id.*

AM-13066 provides in part that an ALJ should "consider a GAF rating as opinion evidence." [Doc. 15-1 at Page ID # 810]; s*ee also Guyaux v. Comm'r of Soc. Sec.*, No. 13-12076, 2014 WL 4197353, at *23 (E.D. Mich. Aug. 22, 2014). However, this administrative message took effect on July 22, 2013, more than a year after the ALJ issued his decision on May 4, 2012, and therefore is not applicable to the ALJ's decision in this case. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 209 (1988) ("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (citing 42 U.S.C. § 405(a); *Bowen*, 488 U.S. at 213 & n.3) (noting that the Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations"); *Ladd v. Astrue*, No. 12-4553, 2014 WL 2011638, at *2 n.2 (E.D. Pa. May 16,

2014) (citation omitted) (finding that AM-13066 did not apply retroactively because, contrary to Plaintiff's unsupported assertions, "changes in the SSA regulations and corresponding policies have been held to apply only in cases decided after the enactment of the changed regulation and/or policy"). While Plaintiff contends that the administrative message does not state new agency policy, but rather merely reminds ALJs that GAF scores should always have been considered as opinion evidence, which Plaintiff contends is in line with the holdings of many courts, Plaintiff does not provide any citation to authority in support of this contention. In this circuit, at least, courts have consistently held that ALJs have no obligation to reference GAF scores in their decisions. *See, e.g.*, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App.'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score. . . .") (citation omitted); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (concluding the ALJ's failure to address plaintiff's GAF scores does not, in itself, make the RFC inaccurate). Thus, the Court cannot agree with Plaintiff's conclusory and unsupported allegation that AM-13066 does not state new agency policy, as such policy is new at least in this circuit. Given that the policy was not in effect until more than a year after the ALJ's decision, I **CONCLUDE** that the policy did not apply to the ALJ's decision here.

Having resolved Plaintiff's arguments involving AM-13066, the Court will turn to the remainder of Plaintiff's arguments alleging error under the treating physician rule. Plaintiff contends in his response brief that the absence of any reference to Plaintiff's GAF scores provided by Dr. Bondalapati constitutes error. However, as noted above, the law in this circuit (at least prior to AM-13066 taking effect) is clear that an ALJ does not have an obligation to refer to a claimant's RFC scores in his decision, and the failure to do so does not make the RFC unreliable. *See Kornecky*, 167 F. App'x at 511; *Howard*, 276 F.3d at 241. Thus, contrary to

Plaintiff's argument, I **FIND** that the ALJ did not err by failing to discuss Dr. Bondalapati's GAF score opinions.

Plaintiff's final argument is that the ALJ erred by discounting Dr. Bondalapati's opinions as a treating physician in favor of the opinions of the state consultative psychologist, Ms. Lawrence. The only opinions of Dr. Bondalapati which Plaintiff argues the ALJ erred by discounting are the GAF scores assigned to Plaintiff by Dr. Bondalapati. While Defendant does not specifically address the ALJ's decision to give great weight to the opinion of Ms. Lawrence while discounting the opinion of Dr. Bondalapati, the Court will nevertheless consider the merits of this argument.

In his decision, the ALJ stated the following regarding the opinions of Dr. Bondalapati and Ms. Lawrence:

> In activities of daily living, the claimant has moderate restriction. In social functioning, the claimant has moderate difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties. In making these findings, I rely heavily upon the opinion of the state agency psychologist, Karen Lawrence, Ph.D., who reviewed claimant's record and found he had moderate limitations in these areas (Exhibit B5F).
>
> . . .
>
> I have also considered claimant's mental impairment in making a finding regarding claimant's residual functional capacity. There is very little evidence of record. VA records indicate claimant has received services for a bipolar disorder with psychosis NOS and is maintained on lithium (Exhibit B10F, pg. 31). Treatment has been sporadic at best. On December 30, 2011, claimant was found to have an irritable mood, racing thoughts and pacing. However, there are no records which demonstrate the claimant's symptoms continued at such severity or was previously at such severity. Nevertheless, state agency psychologist, Karen Lawrence, Ph.D., opined on May 7, 2011, claimant had moderate limitations in performing and carrying out detailed instructions and numerous tasks involving sustained concentration and persistence, adapt to changes in a work setting and socially interact. Specifically, she

13

felt claimant was markedly limited in his ability interact appropriately with the general public, as claimant testified. I grant Dr. Lawrence's opinion great weight and find claimant's ability to perform light work activities is also limited by a restriction to tasks that can be learned in less than thirty days involving no more than simple work related decisions with few workplace changes, unskilled work; he should not have to work with the general public and should not have to constantly interact with coworkers and supervisors. The record does not contain any medical source statement from claimant's mental health treating source, nor do their records contain work related limitations.

(Tr. 20, 23).

Plaintiff does not allege that the ALJ discounted a treating source statement or assessment of limitations. Rather, the only opinions that Plaintiff alleges the ALJ improperly discounted were the GAF scores, which have already been addressed above. The ALJ specifically noted in his decision that "[t]he record does not contain any medical source statement from claimant's mental health treating source, nor do their records contain work related limitations" (Tr. 23). Thus, the ALJ made it clear that Plaintiff's mental health treating source—Dr. Bondalapati—had not provided a treating source opinion for the ALJ to consider with a presumption of controlling weight. Plaintiff has not contested this in his motion or memorandum. Because the only "opinions" that Plaintiff contends the ALJ failed to consider under the treating physician rule were GAF scores, and because the ALJ did not have an obligation to reference GAF scores in his decision (at least in this circuit, prior to AM-13066 taking effect), I **FIND** that the ALJ did not err by failing to reference Dr. Bondalapati's GAF scores. I further **FIND** that the ALJ's decision to assign great weight to Ms. Lawrence's opinion, as a state agency consultative psychologist, was proper, particularly given the ALJ's clear notation that Plaintiff's mental health treating source did not provide an opinion or assessment regarding Plaintiff's work limitations. In light of these findings, I **CONCLUDE** that

14

the ALJ did not violate the treating physician rule.

### C.    Plaintiff's Subjective Complaints of Pain

Plaintiff's second argument is that the ALJ erred by failing to properly assess his subjective complaints of pain.  Specifically, Plaintiff contends that the ALJ failed to consider the narcotic pain medications that Plaintiff has been treated with, despite agency regulations that require the ALJ to consider all evidence presented, and which specifically require the ALJ to consider "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms."  [Doc. 15 at Page ID # 804 (quoting 20 C.F.R. § 404.1529(c)(3)(iv))].  Plaintiff argues that the ALJ was required, but failed, to give good reasons for his assessment of Plaintiff's credibility that are both specific and clear [*Id.* at Page ID # 805 (citing SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996))].  Plaintiff contends that the ALJ's discounting of Plaintiff's credibility was improper, as it was based "solely" upon Plaintiff's return to work and a request for his doctors to release him to work with no limitations, even though Plaintiff never returned to work at a substantial gainful activity level, and the only reason he requested the release was because he had no other way to pay his bills [*Id.* at Page ID # 806-07].

In its motion, Defendant argues that substantial evidence supports the ALJ's credibility finding, and Defendant contends that the ALJ properly discounted Plaintiff's credibility for several reasons provided in the decision.  Specifically, Defendant contends that the ALJ discounted Plaintiff's subjective complaints on the basis that (1) the complaints were inconsistent with Plaintiff's request for medical release forms with no limitations; (2) the complaints were also inconsistent with Plaintiff's request for a workman's compensation form after he lost his job; (3) the complaints were inconsistent with Plaintiff's working for two companies after the

alleged onset date; (4) Plaintiff's complaints of debilitating neuropathy were inconsistent with the objective evidence in the record, particularly an EMG study which demonstrated no peripheral neuropathy or motor neuron disorder; (5) the VA had not rated Plaintiff for disability; and (6) other evidence supports the ALJ's credibility finding, such as the assessment of the state agency consultant's opinion that Plaintiff was limited to light work, which does not support Plaintiff's allegations of physically disabling limitations. Defendant also argues that Plaintiff's treatment records do not support his contention that his pain is completely disabling, given notations in the records that Plaintiff was upbeat and cheerful and in no obvious distress despite his complaints of inadequate pain control. Defendant argues that Plaintiff had reported to his treatment provider that his pain was adequately controlled and he was feeling very good. Additionally, Defendant argues that there is no requirement that an ALJ address each of the factors set out in 20 C.F.R. § 404.1529(c)(3), contrary to Plaintiff's assertions. Defendant further argues that Plaintiff has not shown how his use of the medication undermines the ALJ's credibility determination, since the records show that Plaintiff's treatment provider increased his other medications but declined to increase his pain medication. Defendant contends that the consistency of the pain medication amount, as well as Plaintiff's statements that his pain was being adequately controlled, support the ALJ's credibility determination.

Plaintiff, in his response to Defendant's motion, reiterates his arguments that the ALJ erred by failing to consider "a critical regulatory factor that must be considered," the factor of Plaintiff's pain medication, and instead improperly relies upon "Plaintiff's brief and unsuccessful attempt to return to work at below the level of substantial gainful activity" as well as Plaintiff's normal EMG/NCS study results [Doc. 20 at Page ID # 838]. Plaintiff argues that his pain has been consistently treated with strong narcotic medications, and he has been diagnosed with

diabetic neuropathy, a diagnosis which his physicians did not question even when the EMG came back normal. Plaintiff further argues that his dosage of methadone was increased from a 10mg pill once per day to a 15mg pill twice per day, and contends that the notations that Plaintiff was upbeat and cheerful do not negate his complaints of severe pain. Plaintiff argues that he was not required to apply for VA disability benefits in order to file a Social Security disability claim.

As noted above, an ALJ must consider the claimant's allegations of symptoms, and in doing so should consider both the claimant's credibility and motivation, as well as the medical evidence of impairment. *Atterberry*, 871 F.2d at 571. The Sixth Circuit has made it clear that the ALJ is "in the best position to observe witnesses' demeanor and to make an appropriate evaluation as to their credibility," and thus that "an ALJ's credibility assessment will not be disturbed 'absent compelling reason.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416-17 (6th Cir. 2011) (citations omitted). Furthermore, the Sixth Circuit has been clear that an ALJ's credibility determinations are to be accorded great weight and deference, stating that an ALJ may "rely on her own reasonable assessment of the record over the claimant's personal testimony," *White*, 572 F.3d at 287, and that an ALJ's "credibility findings are virtually 'unchallengeable,'" *Ritchie*, 540 F. App'x at 511 (quoting *Payne*, 402 F. App'x at 113). The court is "'limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record.'" *Schmiedebusch*, 536 F. App'x at 649 (alterations in original) (quoting *Jones*, 336 F.3d at 476).

Here, the ALJ provided a lengthy explanation of his RFC determination for Plaintiff, spanning nearly three pages of the decision. In the very first sentence of his explanation, the ALJ stated, "[i]n making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence

17

and other evidence, *based on the requirements of 20 CFR 404.1529* and 416.929 and SSRs 96-4p

and 96-7p" (Tr. 21 (emphasis added)). The ALJ noted that he was specifically relying upon part

of Plaintiff's testimony and the state agency opinions, together with the recent medical evidence

of record, dated as of claimant's alleged onset date, as most of Plaintiff's records predated his

alleged onset date and related to the previously adjudicated decision. The ALJ then discussed

Plaintiff's complaints and evaluated Plaintiff's credibility, as follows:

> The record establishes claimant has a history of a pain disorder, which is described by the VA as "likely fibromyalgia" and under "adequate control" (Exhibit B10F, pg. 39). Claimant also has diabetes mellitus II with neuropathy and retinopathy, obstructive sleep apnea and obesity. He is maintained on narcotic pain medications and insulin and is treated by the VA. State agency physician, Saul A. Juliao, M.D., reviewed claimant's medical record and concluded claimant would be limited to light exertion work with limited ability to only frequently push or pull bilaterally with the lower extremity, occasionally climb ladders ropes and scaffolds and has limited handling and fingering to frequent (Exhibit B2F). I agree with Dr. Juliao's restrictions. However, I have further limited claimant to performing posturals only occasionally, no climbing of ladders, ropes and scaffolds and include a limitations [sic] from being required to drive. This is due to claimant's testimony and the VA records, which confirm that due in part to claimant's medications and a possible seizure disorder, he must avoid some hazards and driving.
>
> I do not find the record supports further physical limitations despite claimant's arguments to the contrary. Specifically, claimant's attorney argued at the hearing claimant should have further deficits in handling and fingering. He argued his ability to finger and grasp frequently was further eroded by a lessened aptitude, or ability to successfully perform these vocational requirements on an acceptable, ongoing basis. He based his argument primarily upon claimant's testimony that he frequently drops things and has difficulty holding and maneuvering objects, presumably due to his pain disorder (fibromyalgia) and diabetic neuropathy. Although claimant's argument is well stated, I must reject it for several reasons.
>
> First, claimant's testimony he has difficulty gripping, grasping, holding or maneuvering objects is not supported by the record.

Claimant previously complained to the VA that he was having problems with left side weakness and dropping things in 2010. However, at that time, prior to claimant's alleged onset date, an EMG demonstrated "no evidence of peripheral motor neuropathy or motor neuron disease" (Exhibit B7F, pg. 80). A noncontrast MRI of claimant's brain was also normal. Id. VA records do not demonstrate claimant continued to complain of these symptom [sic] past his alleged onset date, or continued to receive neurological services.

Second, the VA noted that on January 21, 2011, the same month claimant alleges his disability began, he requested a return to work form with no limitations be completed (Exhibit B7F, pg. 143). On February 28, 2011, he required a routine medical workman compensation form be completed (Exhibit B7F, pg. 136). New hire queries demonstrate and claimant's testimony confirmed claimant was hired in at least two places, a staffing agency and Kimco, in the second quarter of 2011. Neither form referenced in the VA records was provided for review. Similarly, no limitations were recorded in the record other than a provision for claimant to avoid driving due to his medications. I also note the VA has not assigned any impairment rating to claimant (Exhibit B7F, pg. 109). These factors do not lend support to claimant's argument he cannot successfully complete the vocational tasks assigned to him within the limitations of the residual functional capacity set forth in this finding.

. . .

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

For example, despite claimant's allegations of ongoing, debilitating pain and symptoms, he was requesting medical forms indicating he had no work related limitations whatsoever the same month he applied for disability benefits (Exhibit B7F, pg. 143). Claimant testified they refused to allow him to work. However, one month later they indicated they were completing a workman compensation labor form (Exhibit B7F, pg. 136). Records indicate claimant received unemployment, was later hired at a staffing agency and then Kimco, at which he performed under substantial

19

gainful activity levels. Claimant also alleged debilitating neuropathy. However, an EMG demonstrated no peripheral neuropathy or motor neuron disorder. Claimant does have a history of significant impairments. However, the current record does not indicate those impairments result in limitations which exceed the parameters of the residual functional capacity I have found. Therefore, I must grant claimant's testimony on partial credibility insofar as it is consistent with the residual functional capacity I have found.

(Tr. 22-23).

In his decision, the ALJ made clear findings regarding Plaintiff's credibility, stating that he was granting claimant's testimony "partial credibility insofar as it is consistent with the residual functional capacity I have found" (Tr. 23). Furthermore, the ALJ provided specific reasons for discounting Plaintiff's credibility, noting that (1) Plaintiff had requested forms stating he had no work related limitations at the same time he applied for disability benefits; (2) Plaintiff testified that his doctors refused to allow him to work, but they did complete a workman compensation labor form, allowing him to work; (3) Plaintiff received unemployment, worked at a staffing agency, and worked at Kimco, although he performed under substantial gainful activity levels; and (4) Plaintiff's alleged debilitating neuropathy was unsupported by the objective evidence in the record, namely the EMG study results which came back normal. The ALJ therefore found that although Plaintiff did have significant impairments, his impairments were not as intense, persistent or limiting as Plaintiff alleged, and Plaintiff was capable of performing light work subject to the additional limitations the ALJ included in Plaintiff's RFC determination.

The ALJ noted that he made his RFC determination after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and further noted that he had specifically considered the

20

requirements of 20 C.F.R. § 404.1529, the section of the regulations which Plaintiff contends that the ALJ failed to consider. There is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) (internal citations omitted). The regulation requires that an ALJ *consider* the factors listed, including a claimant's pain medications, 20 C.F.R. § 404.1529(c)(3), but does not require an ALJ to *discuss* each factor in the written decision. *See Ewing v. Astrue*, No. 1:10 CV 1792, 2011 WL 3843703, at *1 (N.D. Ohio Aug. 30, 2011) (finding the plaintiff's arguments that the ALJ erred because he did not discuss certain factors from 20 C.F.R. § 404.1529(c) to be unpersuasive, "as the ALJ is only required to consider them, not discuss them"). Given the ALJ's lengthy explanation for his RFC determination, as well as the ALJ's specific statement that he had considered the very factors Plaintiff alleges the ALJ failed to consider, I **FIND** that the ALJ's RFC determination was proper. I **FIND** that the ALJ provided specific reasons for his findings as to the credibility of Plaintiff's subjective complaints of pain, which make clear the weight he gave to Plaintiff's statements and the reasons for that weight. I therefore **FIND** that the ALJ's RFC determination is supported by substantial evidence.

## V.   CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[3] that:

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**.

2) The Commissioner's motion for summary judgment [Doc. 18] be **GRANTED**.

3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE